**DALLAS INDEPENDENT SCHOOL DIS-
TRICT et al., Appellants,**

v.

**Walter DANIEL et al., Appellees.**

**No. 15,568.**

Court of Civil Appeals of Texas.

Dallas.

April 10, 1959.

Rehearing Denied May 15, 1959.

Andrew J. Thuss, R. L. Dillard, Jr. and Franklin E. Spafford, Dallas, for appellants.

Mullinax, Wells & Morris, Dallas, for appellees.

DIXON, Chief Justice.

On October 3, 1958, Appellee Walter Daniel and Appellee Federation of State, County, and Municipal Employees Local Union No. 1442, hereinafter called Union, filed suit against Dallas Independent School District, W. T. White, Superintendent of Schools, and H. B. Burford, the School District's Supervisor of Maintenance.

Appellees pled that on June 6, 1958 and for several years prior thereto Daniel had

been employed by the School District as custodian of one of its school buildings, but that on said date his employment was wrongfully terminated by White and Burford because of his membership in the Union, which act on part of the appellants was alleged to be in violation of Art. 5154c Vernon's Ann.Civ.St. and Art. 5207a, Sec. 2, V.A.C.S. In a trial amendment they alleged as an additional reason for the termination of Daniel's employment that he was discharged because of the testimony he gave May 15, 1958 in Cause No. 34,-307-H, styled Union v. Dallas Independent School District; and that his discharge for such cause was in violation of Art. 1, Secs. 8, 19 and 27, and Art. 5, Sec. 8 of the Constitution of Texas, Vernon's Ann.St.

Appellees prayed for recovery of back salary, and a permanent injunction requiring appellants to reinstate Daniel in his employment with the School District, with full and complete restoration of all rights and privileges previously enjoyed by him. In connection with their suit appellees also sought and after a hearing on November 20, 1958 were granted a temporary mandatory injunction requiring appellants to reinstate Daniel in his employment pending trial of the suit. Meantime Daniel has obtained other employment at a lesser salary.

Since this temporary mandatory injunction is the subject of the appeal now before us we deem it appropriate to quote material parts of the court's decree: "And the Court finds the facts to be as stated in plaintiffs' petition, including plaintiffs' trial amendment to said petition, and specifically finds that the plaintiff Walter Daniel was discharged from his job as head custodian at the Leila P. Cowart elementary school on June 6, 1958, by the defendants, and each of them, for each of the following reasons, to-wit: (1) his membership in a labor organization, (2) his presentation of grievances concerning wages, hours of work or conditions of work through a representative that does not claim the right to strike,

and (3) his sworn testimony on or about May 15, 1958 given in the 160th District Court of Dallas County, Texas, in Cause No. 34,307-H Styled American Federation of State County and Municipal Employees, Local Union No. 1442, et al. v. Dallas Independent School District, et al, and further, that he was not discharged for any other reason or reasons; * * * And the Court is further of the opinion, and so hold, that the discharge of plaintiff Walter Daniel was unlawful and specifically in violation of Article 5154c and 5207a, Section 2, Vernon's Statutes of Texas, and Article 1, Sections 8, 19 and 27 and Article 5, Section 8 of the Constitution of the State of Texas; * * * Therefore, it is Ordered, Adjudged and Decreed that Clerk of this Court issue a writ of injunction pending final hearing and determination of this cause restraining and enjoining the Dallas Independent School District and W. T. White, its Superintendent of Schools, and H. B. Burford, in charge of its maintenance personnel, the defendants herein, from denying employment to Walter Daniel, and affirmatively requiring that he be reinstated to the position of head custodian of the Leila P. Cowart elementary school, the same position he held prior to his discharge."

In the first of six points on appeal appellants say that the court was without jurisdiction to hear or determine this cause, because appellees Walter Daniel and the Union have not pled or proved that they have exhausted the administrative remedies required by our Statutes, Art. 2654-1, Par. 2, V.A.C.S. Art. 2654-5, V.A.C.S. and Art. 2656 V.A.C.S. before instituting their suit. It is appellants' contention that before appellees can resort to court action they must appeal from local authorities to the State Commissioner of Education.

In answer to this charge appellees point out that appellants did not raise the question in the trial court by plea in abatement, exceptions, or any other pleading or proof, consequently they must be held, under Rule 90 Texas Rules of Civil Procedure to have

waived it. Perhaps the issue will be presented to the trial court in amended pleadings before appellees' suit is tried on its merits, but a search of the record now before us fails to disclose any pleading or evidence in regard to the matter. For that reason we shall not pass on the question itself on this appeal. Appellants' first point is overruled.

In their fourth point appellants charge that the trial court abused its discretion when it found that the discharge of Walter Daniel was in violation of Art. 5154c and 5207a, Sec. 2 of our Statutes; and Art. 1, Secs. 8, 19 and 27 and Art. 5, Sec. 8 of the Constitution of Texas. In their fifth point appellants allege error on the part of the trial court in requiring by temporary injunction that Daniel be reinstated in his employment as custodian of Leila P. Cowart elementary school. In their sixth point they assert that the granting of the temporary mandatory injunction requiring a return of Daniel to his employment anticipates more relief than he would be entitled to on a trial of this case on its merits. We shall discuss these three points together.

The statutes above referred to provide that no person shall be denied employment because of membership or nonmembership in a labor union or labor organization. The Articles and Sections of the Constitution above referred to provide that (Art. 1, Sec. 8) in prosecutions investigating the conduct of public officials the truth may be given in evidence; (Art. 1, Sec. 19) no citizen shall be deprived of life, liberty, privileges or immunities except by due course of the law; (Art. 1, Sec. 27) there shall be the right of assembly, and the right to petition for redress of grievances; and (Art. 5, Sec. 8) district courts shall have the power to issue all writs necessary to enforce their jurisdiction.

It must be remembered that the proceeding on November 20, 1958 was not a trial of appellees' lawsuit. It was merely a preliminary hearing requested by appellees to determine whether a temporary injunction shall be issued pending a determination of the suit on its merits. The lawsuit itself is still pending and undetermined.

■ It is well established as the law of this State that ordinarily a court will not decide disputed ultimate fact issues in a hearing on an application for a temporary injunction; nor will a temporary injunction ordinarily issue if the applicant would thereby obtain substantially all the relief which is properly obtainable in a final hearing.

In Texas Foundries, Inc. v. International Moulders & Foundry Workers' Union, 151 Tex. 239, 248 S.W.2d 460, 464, our Supreme Court said: "Counsel have ably briefed important questions of labor law, but we cannot decide them finally in this proceeding. If questions of that character are to be decided by the appellate courts, the parties should first try their cases on the merits and appeal from the order of the trial court granting or refusing a permanent injunction. * * * It is error for a trial court to grant a temporary injunction, the effect of which would be to accomplish the object of the suit. To do so would be to determine rights without a trial." See also City of San Antonio v. Camp Warnecke, Inc., Tex.Civ.App., 267 S.W.2d 468, 469; Cave v. Montgomery, Tex.Civ. App., 259 S.W.2d 924; Texas Finance & Thrift Ass'n v. State, Tex.Civ.App., 224 S.W.2d 522; Hume v. Zuehl, Tex.Civ.App., 119 S.W.2d 905, and Welsh v. Carter, Tex. Civ.App., 30 S.W.2d 354.

■ The above rule of law is applicable to both prohibitive and mandatory injunctions, but it is especially applicable to mandatory injunctions. Courts are reluctant to issue mandatory injunctions, and will not do so except in most serious cases where the injury complained of is not capable of compensation in damages. First State Bank & Trust Company of Rio Grande City v. Starr County, Tex.Civ.App., 306 S.W.2d 246; Cleere v. Wise, Tex.Civ.App., 153 S. W.2d 311; Nelms v. Electro-Ball Co., Inc.,

Tex.Civ.App., 157 S.W.2d 681; Bledsoe v. Grand Lodge of United Brothers of Friendship of Texas, Tex.Civ.App., 53 S.W.2d 73; 15 A.L.R.2d 247, 323, 328.

In the case now before us the ultimate fact issues to be decided when the case is tried on its merits, according to appellees' petition, are whether Daniel was discharged from his employment because (1) of his membership in a labor union, and (2) his testifying in a critical manner of appellants in another lawsuit. Should Daniel prevail upon the trial of the case on its merits, he will be reinstated in his employment and will be compensated by payment of his back salary, or at least payment of the difference between the amount of his earnings in his employment since his discharge and the amount of the salary he would have been paid had he not been discharged.

At the preliminary hearing on November 20, 1958 there was conflicting testimony in regard to the ultimate issues. Appellees, of course, undertook by their testimony to support the allegations of their petition. Appellants on the other hand denied the charges, and told a different story as to their reasons for discharging Daniel from his employment.

In this connection we deem it appropriate, in order to show that the ultimate issues were disputed, to quote from the testimony of Superintendent White:

"Q. That was the basis for your knowledge as to the reason for the discharge, was it not? In other words what this man said at the trial? A. May I answer the question in a sentence? The fact that Mr. Daniel was in a lawsuit was incidental. The reasons for his discharge, as I approved Mr. Burford's action, involved insubordination, the attempt to fix policy through determining when the office should be closed or opened, the objection to and resistance to arranging the furniture the way the teachers needed it; and furthermore, the objection to his doing his work as assigned. Now, it would have made no difference whether that information had come as a result of testimony, or through direct observation. The results would have been the same.

"Q. Did you receive any further information after the trial and prior to his discharge, on which you based the discharge? A. Yes, in discussing the case with Mr. Burford, we found that Daniel was the type of fellow that probably could hold onto a job, but he would not do an effective job, his assumption of responsibilities and thoroughness were very mediocre.

"Q. In other words, your information was entirely from what you heard at the trial and what you heard in your conversation with Mr. Burford, is that correct? A. And through the supervisory force.

"Q. All right, but it was not the basis of his discharge, is that right? A. The basis of his discharge was the points I enumerated to him and Mr. King on June 18th, I can give those to you if you would like.

"Q. All right, would you do so please? A. First, that Mr. Daniel was insubordinate in assuming to take over the administration of the building when he objected not to maids, but to his maid having to sweep an office after 4:30 in the afternoon. If the custodian can fix the hours of the office, he is in control of the building, and not his principal. Second, that the teacher has flexible furniture, and it is arranged according to the way the teacher and the children can get the greatest benefit from it. We don't have any screwed down desks. The reason we have flexible furniture is to give the teacher and the children a great deal of variation in their activities and program. It is not the function of the custodian

to determine whether or not the chairs, desks and other furniture in the rooms will be arranged in any particular fashion. Second, that it is the assigned job of every custodian to take care of the front part of the yard. The custodian that feels that that is an imposition on him is in the wrong job. Undoubtedly he had a distaste for his work, and should seek other employment. Next, that the attitudes and objections that Mr. Daniel had raised, would demoralize the operation of the custodial employees in the school system. If the employees throughout the school system assumed the same arrogant attitude that Mr. Daniel did at the Leila P. Cowart building, we could have no direction of their activities, and certainly no responsible work on their part. That his being a member of the union had no bearing whatsoever on whether he worked in the school system, or not."

The court unquestionably in the preliminary hearing of November 20, 1958 made determinations adverse to appellants on the disputed ultimate issues as if this were a trial on the merits of the case. The written decree says that the court "finds the facts to be as stated in plaintiffs' petition, including plaintiffs' trial amendment." The decree further goes on to find that Daniel was discharged for (1) his membership in a labor union; (2) his presentation of grievances through a representative, and (3) his testifying in another lawsuit; and "he was not discharged for any other reason or reasons." As a result of these findings the court concluded that appellants have violated the Statutes and Constitutional provision hereinbefore named, and ordered Daniel restored to his employment at Leila P. Cowart Elementary School.

Thus the ultimate issues of this case were decided against appellants in a preliminary hearing. Appellants were condemned in advance of a trial on the merits. The order of the court went far beyond the mere maintenance of the status quo. It awarded to appellees before a trial of the case the relief which was the main object of their suit. We believe it was error to issue the temporary injunction. Appellants' fourth, fifth and sixth points are sustained.

In their second point on appeal appellants attack the court's decree in favor of the Union on the ground that the Union has no justiciable interest in the suit. Appellants point out that the Union has no contract with the School District, and that Art. 5154c, Sec. 1, 2 and 3 V.A.C.S. provide that it is against public policy of the State for any political subdivision of the State to enter into a collective bargaining contract with a labor organization, or for public officials to recognize a labor organization as the bargaining agent for any group of public employees. Appellees counter that the Union is a proper party under Art. 5154c, Sec. 6, V.A.C.S. and El Paso Building & Construction Trades Council v. Texas Highway Commission, Tex.Civ.App., 231 S.W.2d 533.

Since we have sustained appellants' fourth, fifth and sixth points, we consider it unnecessary to pass on the second point on appeal. The question there raised will doubtless be passed on by the trial court before proceeding to final judgment of the case.

In their third point appellants contend that there was no evidence to support the trial court's three fact findings as stated in the court's decree. We think the evidence pertaining to the fact issues was conflicting. Therefore the third point must be overruled. However, as we have already pointed out, we think it was error in this case for the trial court to determine the disputed ultimate fact issues on their merits in a hearing on an application for a temporary injunction.

The order of the trial court granting appellees a temporary mandatory injunction is reversed and an order is here entered denying appellees' application for temporary injunction.

Reversed and rendered.